6-8 Calhoun v. Jack Doheny Companies, Inc. And this is Mr. Cronkite representing the appellant. Is that right? Correct, Your Honor. All right. And you're obviously ready to proceed. You may. Thank you, Your Honor. All right. What is the court required to do applying Texas law under the following three circumstances? 1. Movement has requested a preliminary injunction requesting that injunction to prohibit further violations of a non-competition covenant. 2. The district court, in assessing that request, has concluded that the covenant not to compete is patently unenforceable as written. And 3. Movement has requested the district court to reasonably reform that covenant and enter a preliminary injunction thereof. Under those circumstances, in this case, the district court erroneously denied appellant's request for a preliminary injunction, committing multiple errors of law. First, and perhaps most fundamentally, the district court applied the four preliminary injunction requirements using the covenant the district court had already concluded was not enforceable. The district court, despite requests, declined to analyze those four preliminary injunction requirements using a reasonably reformed covenant. This approach of the district court necessarily doomed appellant's request for a preliminary injunction. And it impacts not only Jack Doheny Company in this case, because if the district court's approach in assessing preliminary injunctions in the context of an initially unenforceable covenant not to compete, any party that has initially entered into an unenforceable covenant not to compete will never, at the preliminary injunction stage, ever be able to obtain preliminary injunctive relief. It's created, in effect, a new rule for how can any party ever establish that they're likely to prevail on the merits of enforcing an unenforceable covenant? How can any party ever demonstrate that it's in the public interest to enforce an unenforceable covenant? John, let's say we agree with you, or let's say I agree with you, that the district court had a duty to reform the non-compete. Should we stop there and just remand? I mean, we've done that in at least one other case I've seen, and say, all right, you had a duty to reform, so we're going to send it back so you can do that. Do you think we should do that, or should we go further, assuming we agree that it should have been reformed? Your Honor, I think that your court should go further. I think that the court should enter a preliminary injunction using the reformed covenant not to compete that I suggest. I actually gave two iterations in my reply brief. Here's why remand isn't necessary in this case. I am aware that in some cases, under some factual circumstances, remand is appropriate in some court's views to develop the record, if you will. Here, Mr. Calhoun did not create an issue of fact. If you look at a reformed covenant, reasonably reformed covenant, which is such as the one I proposed, Mr. Calhoun's admissions and the evidence submitted by my client, Jack Doheny, shows that there's no issue of material fact that would lend itself to a need of a remand. In my proposed covenant not to compete, I'm suggesting that it be limited to any customer that Mr. Calhoun serviced while at Jack Doheny companies. Does the original covenant, Mr. Cronkite, say anything about customers? It does not, Your Honor, but here's what it does. You're suggesting that a court should write that in. It is part of the reformation. You're correct, Your Honor. Here's why I reason that. Where would we, in the existing covenant, what are we looking at to derive from that some inclusion of customers? What about that covenant that says customers ought to be a part of it? We could reform it and include customers. Your Honor, the covenant as written provides that Mr. Calhoun shall not perform industrial utility vehicle services. That, I think we can all agree, is the umbrella. It's the overarching prohibition. Well, it's overly broad. You're avoiding using that word, but you're using overarching. The argument is really that overbroad, isn't it, under Texas law? An argument can be made both ways. I mean, reasonable minds could differ. I think for purposes of appeal, I've decided it makes the most sense to request reformation as I did below. But to answer your question, Your Honor, your initial question, the customers are subsets of the non-competition covenant as written. Let's just assume that the covenant was enforceable, as written. Certainly, Mr. Calhoun could not go in and provide industrial utility vehicle services to the customers of Jack Dalhouni companies. My reason, Your Honor, is that the solicitation or provision of services to Jack Dalhouni customers is simply a subset of this, as you call it, overly broad covenant. What I've asked is, well, let's limit it. Let's narrow it down to just the customers that Mr. Calhoun— You say just the customers. You're saying there's some broad umbrella that would include customers. I'm saying, go ahead. What's your best Texas authority that a court has the—Texas case, that a court has the authority to reform a covenant in that way that you're suggesting that we do? Well, if you—Your Honor, I think Webb v. Hartman newspapers is probably the best example of that. There was a reformation in Webb. Basically, the court modified the scope and geography of the trial court's preliminary injunction on appeal. They didn't remand it. They actually modified the scope right then and there. In that reformation, there was no actual identification of any customers in the injunction, which is something that some of the courts have suggested you may need under certain set. You have to actually identify the customers that you cannot do business with or solicit. In Webb, there was no identification of customers. I'd also, Your Honor, point to the Supreme Court case of Johnson, Your Honor. If you look at the covenant not to compete in that case, the court upheld a covenant not to compete at the preliminary injunction stage that had no geographic limitation. The reasoning was that given the nature of the employer's business, which was nationwide, and given that the covenant not to compete was limited to the customers that this former employee had serviced, it was enforceable. It's reasonable because you're catering the breadth of the covenant to the prohibition, which is what I'm suggesting be done by the court here, which is to limit the breadth so that it's only the customers that Mr. Calhoun was interacting with. I want to address one other thing on the remand point. Your Honors, let's say that we don't even want to do no geographic limitation, even if it's only limited to the customers Mr. Calhoun interacted with. In the record, there was sufficient evidence for the district court minimally to enter a covenant as reformed to prohibit Mr. Calhoun from doing business for industrial utility vehicle services for three states, Texas, New Mexico, and Oklahoma. There are submissions showing that while he was the southern regional manager projecting unique companies, that he had a six-state scope of providing services. Mr. Calhoun's own affidavit, he said, hey, 80% of my work was in Texas. The vast majority of the rest was in New Mexico and in Oklahoma. Then he equivocates and says, I did work in other states, but it was insignificant. My point is this. The district court clearly erred when it found it impossible to reform, even if the district court thought it would only be reasonable to limit it to a certain geographic scope. The record establishes that there was plenty of evidence there from which the district court could have narrowly limited. I think that this court should not limit it to only Texas or to Oklahoma or to New Mexico. There's far more states in the record. But you agree that as originally written, it said North America, didn't it? It did, Your Honor. And so your argument for reformation is a concession that as written, it's too wrong, isn't it? Well, Your Honor, I'm not stipulating to that. You're not urging on appeals. You're not urging that point on appeal. You're arguing for reformation. Correct. You're correct, Your Honor. I'm not contesting the district court's finding that it was unenforceable. I'm not. I'm not. What I'm contesting on appeal is... ...isn't the issue here as to whether Mr. Calhoun can contact customers with whom he has had contact, even as long as they were custom trucks customers as well. Isn't that the issue here that's really dividing this? Your Honor, I think you can see that, as I understand your brief, that you would accept a reformation that would exclude his contact with persons with whom he, with the customers of your company and let it go at that, right? Your Honor, it's actually even narrower. I don't think he can't communicate with them. I don't think he can't provide industrial utility vehicle services. But he can't solicit their business, can he? Not for industrial utility vehicle services. If he wants to provide some other service that my client doesn't provide, he can do that. We have no dog in that fight. I'm simply saying you can't do what you were doing for a competitor what you were doing for my client, for our customers. That's all I'm asking. Which is what? Which is Mr. Calhoun cannot perform or provide industrial utility vehicle services for any JDC customer that he interacted with while a JDC employee. His job performances were beyond that of simply sales. Is that correct? He was a management tutor, your Honor. Management of sales. That's essentially what we're talking about, is sales. Is that correct? I agree. He was a high-level salesman, your Honor. And really, the essence of selling is soliciting, as far as you're concerned, in this form. Well... What other services is he going to perform other than to try to increase or obtain sales for the product of customer trucks? I don't think he is, your Honor. But a distinction I would make is between solicitation and performance. So sometimes covenants are actually drafted to say you shall not solicit customers of your former employer. The way that the covenant is actually drafted, it doesn't talk about solicitation, meaning if I reach out to a JDC customer, it says you shall not perform. So regardless of whether Mr. Calhoun picks up the phone and actively solicits, or a JDC customer picks up the phone and says, Mr. Calhoun, I would like you to do business, the covenant, as drafted and as reformed, says you can't perform industrial utility... I didn't know that you were continuing to press that point. I thought that the matter had come down to whether he could solicit former customers. Um, but if they called him or they came to him for business, he was not prohibited under the no-compete agreement from accepting that particular client as a customer of JDC. JDC, your Honor. And your Honor, that could be a formulation that the court believes is more reasonable than what I'm suggesting. The reason I believe it's reasonable to prohibit Mr. Calhoun from performing and providing industrial utility vehicle services is the very logic that animates the protection of goodwill and the rapport that's been established by the former employee with the customer. For instance, Mr. Calhoun established a relationship with Rock Service through my client. To me, there's no principle distinction between Mr. Calhoun picking up the phone after he leaves Jack Doheny Companies and saying, hey, here's some industrial utility vehicle services, I can save you some money, from the customer, Rock, picking up the phone and saying, hey, I see you're a new place, I want to do business with you. The end result is the same. Mr. Calhoun established the rapport in goodwill. Rock had a relationship with Custom Trucking which predated Calhoun's employment there, isn't that correct? Your Honor, I disagree. I don't think there's any evidence in the record that actually establishes that. Mr. Calhoun did say in his affidavit, your Honor, that in 2011, Rock Service was doing business of some kind with Custom Truck. Mr. Calhoun wasn't with Custom Truck in 2011. How can he personally adhere to that point? There's no documents in the record, your Honor, to actually show a pre-existing relationship. And three, perhaps most importantly... So your client denies a pre-existing relationship? Yes, and I don't think there's anything in the record to actually support the district court's decision of a pre-existing relationship. And I think Mr. Calhoun intentionally kind of alighted the point of, well, even if there were a pre-existing relationship, what kind of pre-existing relationship? What services were being provided? Mr. Calhoun himself says in his affidavit... Does this all amount to the fact that we should remand it for a more no-compete agreement that is applicable and reasonable here? Your Honor, I do not think that's appropriate. I think we had an evidentiary... How can we do it if we don't even know the facts? How can you know what is reasonable without knowing the facts that underlie the relationship? Well, your Honor, I think we do have facts in the record that show that Rock was a customer of, and is a customer of Jack Mahoney Companies, and that Mr. Calhoun did solicit him through his email communication to try to save them some money, which certainly is moving a party to action. And if you take those facts and couple them with a reasonably reformed covenant to limit Mr. Calhoun from providing services to only the customers of JVC that he performed, what function, your Honor, does a remand and an evidentiary hearing serve? None. Nothing will be established there. It'll just be more time and money. But your Honor, I would say to the extent that the court believes remand is appropriate, minimally enter a preliminary injunction now pending the evidentiary hearing. I had to wait many months for an evidentiary hearing, and unfortunately, Mr. Calhoun has been soliciting my client's customers unimpeded since June of 2019. We're approaching a year, and I would request some protection. That's effectively what I asked the district court to do, stem the bleeding for now. So I have proposed a reformation that I believe fully comports with both the intent of the contract and Texas law. And I'm asking the court to enter a preliminary injunction to that effect rather than remand for further proceedings. If there are any questions, I'm happy to answer any. Thank you, Your Honor. Your time has expired. Mr. Rosenberg? Yes. Good morning. May it please the court, it's a privilege to be arguing in front of this court today. My first statement I'd like to make really relates to the observation Judge Jolly just shared about remand. I do not agree that remand is appropriate, but for different reasons. I don't believe there has been any showing of abuse of discretion. If this court were to remand this case, that would mean that the appellants would prevail on the appeal and there's a basis for remand. I don't believe that there's any evidence in the record to substantiate an abuse of discretion by the trial court. Mr. Cronkite shared with the court that he had to wait many months to get, or I don't think he said many months, but an extended period of time to obtain his injunction hearing. Well, that's just the way things shook out with the court's calendar. To Mr. Cronkite's credit, he did request a hearing about a month earlier than it was. I happened to be sitting on an operating room table the day that the hearing was actually scheduled and it was moved back a month to accommodate a health issue. But other than that, we're talking two or three months after the lawsuit was filed, and that's to no fault of Calhoun's. It's pretty clear to me, and if we look at the record on Appeal 355 to 356, which is Judge Hank's memorandum of opinion, he states clearly that there's virtually no evidence in the record clarifying how much contact Calhoun had while he was working with JDC and other issues. He made it clear in his opinion that if there was new evidence that had to be presented to the court, he would consider it. But Judge Hank's overruled or denied the request for injunctive relief based on the record that was developed before him, before the court at that time. So what did that evidence consist of? It consisted of an affidavit on the movements part from Mr. Schaefer, who was the principal at Doheny Company. Paragraph 13 of Mr. Schaefer's affidavit speculated stating that Calhoun could unfairly leverage his position. And then another hypothetical, if he became a repair manager, for example, he could unfairly leverage contacts. What should have happened before it came to this court, Doheny should have accepted what I viewed as a clear invitation from Judge Hank's to develop the record. It's already June 1st of 2020, six, seven months after the injunction hearing, and not one deposition has been taken. There is no more evidence available to this court than was available at the time Doheny moved for the application for injunctive relief. In many instances, your honors, we've seen how companies or entities that are urging injunctive relief have requested expedited discovery to develop a record to present to the district court. It just simply wasn't there in this situation. There was, there was not- If you are asking for remand when you've asked for remand, I'm saying that this, I'm arguing that the request for injunctive relief is, the request for appellate relief came too soon. Judge Hank specifically said, he didn't say before you go to appeal, but it's clear in the order, if there is evidence that needs to be presented, bring it to me. They didn't do, Doheny didn't do exactly what Judge Hank said he needed to do, but they're standing, they're standing on the record before the court right now in support of a request for injunctive relief, which simply isn't enough. And it's definitely not enough to show that Judge Hank's abused his discretion. You have to- You said that it is clear that Judge Hank's, whenever he issued the injunction, said, if you come back to me with more evidence, I will modify the injunction accordingly. Is that what you're telling me that was said by Judge Hank's? Yes, to the qualifier, the issue of the injunction, he denied the request for injunctive relief. But when he issued that order, it's clear on page 355 to 356 of the record that Judge Hank's did that. And I will defer to what's in the record. And one of the things that Judge Hank's brought up is something Judge Graves alluded to moments ago, that the drafting of the non-compete raises a point in that it can't be reformed to present a simple ban on solicitation of customers because that's not in the agreement as Judge Graves observed moments ago. So my position, Your Honor, is very, very clear and direct. There isn't enough in the record before this court to show that there's any abuse of discretion on Judge Hank's court, and it would have been incumbent upon Doheny to develop a record before bringing it to this court. There was plenty of time to do that, and it didn't happen. So I would clearly state that. The other point I'd like to make... So what you're saying is that after the injunction issued, he should have come forward with additional evidence to reopen the injunction order to present this additional evidence that would justify an injunction. Is that what you're telling us? Precisely. Precisely. There wasn't... You know, there are a lot of good cases cited in the briefing by both sides, but one of the cases cited was a case that originated from Judge Ellison's court in Houston called TransPerfect. It's cited in the papers. I don't have the record right now, but in that case, Judge Ellison granted injunctive relief because at the point of that hearing felt that there was enough in the record to substantiate that. Judge Hanks, in this case, is not saying, I'm not going to do it, but he said, I need to see more, and there's not enough here for me to do it. So the question then becomes... A citation that would confirm that Judge Hanks expressed himself in the way that you have suggested? Yeah, it's in the record. I'm going to hand it real quick, Your Honor. It is... You can burn your set later if you wish. No, I have it right now, Your Honor. We're working in the conference room. It's page 466 of the In short, respectfully, I'm denying your request for injunctive relief. And again, I don't believe you've carried the burden on likelihood of success, and I don't believe you carried the burden with respect to irreparable harm in this matter. And here it is, Your Honor. And you're free, if there is further discovery in this matter, to come back to me. I will look at it, and I can consider injunctive relief at that time, but at this time, based on the record and the state of discovery, it's respectfully denied. I read that verbatim. And I think it's a well-reasoned position in making a decision not to grant extraordinary relief in this situation. There was a lot said in the hearing, in the record before the court, that before all this happened, one of the reasons why Calhoun left the employment of the Doheny Company was because he was demoted substantially. A significant loss of income. He had to support his family. This was back in the last crisis we had, Hurricane Harvey here in Houston, and left because he was demoted and left. And the court took that into consideration, too. There's a lot of material in exercising discretion that the court will take into consideration before it decides whether to grant extraordinary relief, such as an injunction. Why don't you address the question of whether there is facts to support a breach of the agreement? The only evidence to support the breach of the agreement is, there are two things. There's a and the second part is this email exchange between Mr. Calhoun and a representative from another company, the name of which escapes me right now, when they're talking about a price quote and a potential to save money. That, if it constitutes anything, and I want to be clear, I don't believe this is a solicitation under Texas law, the Athens case that's been cited by both sides. But that's the only... At this point, it appears to me that the issue is rather muddied as to whether there was a breach. I mean, the facts would seem to support or at least indicate confusion on that point. Why should we remand it to determine whether, in fact, there was a breach? Because that at least is part of the reason that the district judge in denying an injunction is that there was no breach. Am I correct about that? I clearly think you're correct, but I think it's something you've said before. There's a case that you actually offered that's not published, but Nextdoor Broadcasting versus Time Warner back in 2013, you spoke to construing this type of contract under Texas law and what the court should consider and how the court should consider the contract of a whole, affording each part of the contract the effect it deserves. So that's exactly... That's probably my best argument, is something you wrote 12 years ago or so. I mean, that's unfair to run back. It'd be something I don't even remember. Well, Judge, I don't remember the first time I argued before you, so we're even. Did you say that was unpublished? Well, it's a Fed App, Fed Appendix opinion. Judge Duncan, you would be disappointed with me if I didn't throw back something somebody on the panel said at some point. Well, that sounds like we don't have to follow that. Well, to Judge Jolly's credit, it relies on very, very good Texas Supreme Court and both two cases in the Texas Supreme Court. Yeah, but that really doesn't seem to answer the question that I was raising, and that is that in part, the district court denied injunctive relief on the basis of a factual basis, and he said there had been no breach to begin with. Correct. Now, that does not seem clear to me under the record before us at this time. There may well have been a breach, and it seems like a lot of the evidence points perhaps more persuasively to the fact that there was a breach than that there was not a breach, and why shouldn't we remand it at least on that basis to determine whether the district court erred in that rather crucial finding? Because the standard is whether or not he abused his discretion. If he made an error of fact, and it's a clear error of fact, that wouldn't be an abuse of discretion. I agree 100 percent, but there is nothing in the record. We have an undeveloped record, but Judge Hanks, the district court specifically said, if you have something, bring it back. If then, I would argue, I'll take that one step further, if then he would not consider all of the evidence, or there's something in the evidence that would have substantiated a grant of an injunction relief, then it's remanded. But it's incumbent upon the appellant to present the record to the court, this court. It's not incumbent upon Calhoun to present their record for him, and that's what they didn't do in this court. I believe the appeal was premature, because all they had to do was follow what Judge Hanks basically pleaded with them to do on the record, give me more evidence, give me something else to consider, but based on this time, I respectfully deny the request. So I don't know what more Judge Hanks could have done to prevent this from happening. And then for them not to act on it, we've had six, seven months. Okay, I'm going to ask you whether the district court denied an evidentiary hearing. Was there ever a request for an evidentiary hearing, and did the district court deny? So there was never a request. The district court set the hearing as it was. When we appeared in court that day, the record will clearly establish that nobody, me as well, nobody said we need more evidence, we need to present evidence, we need more time. Nobody had a witness there at that hearing? No, that's incorrect. We, Mr. Cronkite had a gentleman whose name I don't recall. I had Mr. Calhoun with me. I think that's one thing that Mr. Cronkite and I will certainly agree on. How were those witnesses put on to testify? You know, we, the judge conducted the hearing as it saw fit. I, quite frankly, I don't recall Mr. Calhoun receiving any evidence. He did not. He did not. There was never a request. There was nothing on the record that I recall on Mr. Cronkite's part that said, I want to put on this witness. I certainly, I will tell the court, I did not ask the court to put on Mr. Calhoun for strategic reasons as the argument was developing. I may have if it went differently, but I didn't. But I don't think you'll see in the record any request or any statement or any objection on Mr. Cronkite's part that you're doing this wrong. I have to put on my witness. I don't believe that that's in the record at all. The judge dictated how the hearing was going to proceed, and we followed through as officers of the court. I want to speak a little bit about the solicitation, the solicitation issue, because Mr. Cronkite in his briefing takes the position that the communication, and we're dealing with this one email exchange that's been presented to the court, constitutes solicitation as is defined by the recent, not so recent, 2016 14th Court of Appeals from Houston decision in the Athens case. I've talked about it before, and I want to speak about it again one more time. First of all, as Judge Graves mentioned earlier on in the argument, the non-solicitation provision dealt with employees and not customers. This is a customer situation, but regardless, whichever way it would have applied, to constitute solicitation in Texas law, it's more to simply just ask. It's almost impugning or begging or such an accelerated form of communication to incite. I don't believe that the evidence in this case, even if you're just looking at that one email, which is all you have before the court right now, it doesn't rise to the level of solicitation in Athens. The last thing I want to notice, I have some time left to share with the court. There's a question whether or not Texas law is clear, whether or not reformation is remedied now at the preliminary injunction stage or at the final judgment stage. There isn't a case that clearly sets it forth. I would argue that Cardinal Health, which is a case we've cited, does state that you can only reform at the end of the case. There are two cases that follow. There are more, but there are two that we rely on. There's Gray Wireline, which is from the Waco Court of Appeals, and Sentinel Integrity, which is from one of the two courts of appeal in Houston. But you would have to acknowledge, would you not, that that is a minority view. I mean, there have been many, many cases in Texas, apparently, that have modified the terms of the contract. Yeah, there have been, but I think we go back to where I was before and why this case, why there should be no remand in this case. It goes to the Trans-Perth case. In that case, we had a situation where the district court did grant reformation at the injunction hearing, but with a developed record. If I could rest my argument on one principle today, it would be that reformation is not appropriate in this case because of the development in the record, of the shortcomings in the development of the record at the district court. We're speaking, we're talking about reversing a district court on an abuse of discretion standard, which is critical in my argument, when all the district court did in this case was exercise discretion, and reasonable discretion. If you have more evidence, bring it to me. Well, they didn't in effect. In effect, the district court allowed to stand an extremely broad no solicitation agreement that everybody seems to agree is unenforceable as written. Right, but one of the factors that goes into the decision in denying injunctive relief is whether or not the non-compete placed a greater restraint upon Calhoun than was reasonably necessary to protect- Why didn't the district court have the obligation to reform the contract when it seems to be unquestionably unenforceable as written? Because there wasn't enough evidence before the remanding to allow the district court to perform his duty of reclamation. Because they did not satisfy their burden at this point. Remanding would equate to an abuse of discretion, and I don't believe that that's what I did in this case. You have to charge the case on an abuse of discretion standard that is well-reasoned and clearly follows the law. The district court was doing its job at the time, and analyzed the case with what was before it. You can't, I would argue to the court, you can't reverse a district court for doing what the district court is charged to do, and reward the appellant for not coming forward with a clean record of where the problems were, where the solicitation was, where the competition was coming from, who established a goodwill relationship with the customer that might have been coming to the other company. There are so many things that were incumbent upon the appellant to produce to the court that it hasn't. So it punts to this court to step in the shoes of the district court. My argument is no, that shouldn't happen here. The district court should have been entitled to judge the case on what was before it, and they should have put the evidence before the court. Thank you, counsel. Thank you. Yeah, may I have 60 seconds, just because he had overage. I want to talk about the issue of remand. It sounds like the court is seriously considering it. What I want to talk about before that is, why did you immediately appeal the denial of injunction instead of accepting the district court's invitation to amend it later, especially when you have told us today that there have been violation after violation after violation of this agreement since the time the district court held the hearing? Your Honor, the order that was issued by the court did not invite me to rebring the motion for preliminary injunction. We just read what the district court orally stated, and it would seem that that would have been the prudent reason. Why did you immediately go on the rather thin evidence that you had, a violation at that time, instead of proceeding immediately to appeal? Your Honor, I will be frank. I have serious concerns whether this district court judge has any interest in entering a preliminary injunction. He, the court has seen how he handled the hearing. He initially told everyone, I'm going to take proofs on the record. I'm going to take testimony. Your Honor, he asked me, Counselor, you have no evidence that Mr. Calhoun reached out to your customer and solicited. I said, Your Honor, he's here today. Let's put him on the stand. Let's ask him. The court said yes, then disallowed it. Your Honor, my concern is, even had the court said in his order that I could refile my motion for preliminary injunction, given the way that that hearing was handled, given the conclusion that the court had already reached regarding the enforceability of non-compete, it's futile. It's futile. I have serious concerns that if we remand for a second evidentiary hearing, we're going to face the same exact circumstances, just in a different way. What the judge did say at oral hearing, but not in his order, he kept the door open for the possibility that injunction hearing may be granted at some later date, but gave no guidance. Didn't reform the non-compete. Didn't say, here's what a reasonable non-compete looks like. Now show me the evidence that you have to fit it. Didn't do any of that. Because I, frankly, Your Honor, I don't believe there's an interest to enter a preliminary injunction or an injunction of law in this case. So that's what, that, I didn't do it because it wasn't actually in the order allowing me to do it, even though he did make that comment. Did you have some other points to make before you lose all your time on the model? Your Honor, that's the only point I wanted to make was the issue of remand and what's going to occur if remand takes place. All right. Thank you, counsel. Thank you, Your Honor. We'll take the matter under advisement and we are adjourned for the day. Thank you.